FILED
2022 Aug-01  PM 01:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **MELISSA MICHELL ELROD,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**ANDREW SAUL**<br>**COMMISSIONER OF**<br>**SOCIAL SECURITY,** )<br>)<br>**Defendant.** ) | 4:21-cv-00047-LSC |

## MEMORANDUM OF OPINION

### I.   Introduction

The plaintiff, Melissa Michell Elrod ("Elrod" or "Plaintiff"), appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI"). Elrod timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Elrod was 39 years old at the time of her SSI application, and she attended school through the eighth grade. (Tr. at 91, 240.) Her past work includes experience

1

as a deli cashier and a fast food worker. (Tr. at 37, 240.) Plaintiff originally claimed that she became disabled on June 23, 2018, but she requested to amend the alleged onset date to June 28, 2018, at the hearing before the ALJ. (Tr. 39.) Plaintiff claims that she became disabled as a result of several conditions including back issues, bulging discs, "Si Joint Issue," mental problems, asthma, high blood pressure, high cholesterol, and diabetes. (Tr. 239.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational

requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *Id.* The decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial evidence in the record" adequately supported the finding that the plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. *Id.*

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent her from performing his past relevant work, the evaluator will make a finding of not disabled. *Id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find her not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work the evaluator will find her disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the Administrative Law Judge ("ALJ") found that Plaintiff has not engaged in SGA since June 28, 2018, the amended alleged date of the onset of her disability. (Tr. 18.) According to the ALJ, Plaintiff's obesity, lumbar degenerative disc disease, osteoarthritis, carpal tunnel syndrome, obstructive sleep apnea, and asthma are "severe impairments." (*Id.*) However, the ALJ found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 20.) The ALJ determined that Plaintiff has the following RFC:

> [T]o perform sedentary work as defined in 20 CFR §§ 404.1567(a) and 416.967(a) except as a part of the job requirements, she is unable to climb ladders, ropes, or scaffolds; or perform around hazards. She can occasionally climb ramps and stairs. She can frequently stoop, kneel, or crouch, as well as handle or finger with either or both upper extremities; but would no more than rarely (no more than ten percent of the workday) crawl; and would not perform in concentrated exposure to extreme hot temperatures or environments of fumes, odors, dust, gases,

and poor ventilation, etc. The claimant may use an assistive device for walking greater than ten feet at one time.

(Tr. 22.)

According to the ALJ, Plaintiff is unable to perform any of her past relevant work. (Tr. 25.) The ALJ also determined that Plaintiff is a "younger individual age 18-44" at 38 years old on the amended alleged onset date and has a limited education. (*Id.*) The ALJ determined that the "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills." (Tr. 26.) Because Plaintiff cannot perform the full range of sedentary work, the ALJ enlisted a vocational expert ("VE") and used Medical-Vocational Rules as a guideline for finding that there are jobs in the national economy with a significant number of positions that Plaintiff is capable of performing, such as an addresser, cutter and paster, and document preparer. (*Id.*) The ALJ concluded his findings by stating that Plaintiff "has not been under a disability, as defined in the Social Security Act, from June 28, 2018, through the date of this decision." (Tr. 27.)

## II. Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is

5

substantial evidence in the record as a whole to support the findings of the commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520. 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984) (citing *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1989)).

## III. Discussion

Plaintiff argues that the ALJ's decision should be reversed and remanded for two reasons: (1) the ALJ's assessment of the opinion of April Connell, NPC, was not supported by substantial evidence and warranted further development of the record, and (2) the ALJ erred in evaluating the plaintiff's subjective complaints because his assessment was not supported by substantial evidence. (Doc. 13.)

### A. The ALJ's Assessment of the Opinion of April Connell, NPC

To be found disabled, Plaintiff had to demonstrate that she was unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment expected to result in death or to last twelve or more continuous months. *See* 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 404.1505. At step two, the ALJ had to determine whether Plaintiff had a medically determinable

impairment or combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). An impairment or combination of impairments is "not severe" when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Ruling(s) ("SSR"s) 85-28. The burden of showing that an impairment or combination of impairments is "severe" rested at all times with Elrod, as the Plaintiff. *Turner v. Comm'r of Soc. Sec.*, 182 Fed. App'x 946, 948 (11th Cir. 2006) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). Because Plaintiff bore the burden of proving she had a severe impairment, she thus had the burden of establishing the prerequisite for finding a severe impairment, i.e., the existence of a medically determinable impairment. *See Doughty*, 245 F.3d at 1280.

The record must include evidence from acceptable medical sources to establish the existence of a medically determinable impairment. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1513(a), 416.913(a) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability … ; there must be medical … findings, established by medically acceptable clinical or

laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities ...."); *see also* 20 C.F.R. § 404.1502 (defining symptoms, signs, and laboratory findings).

Here, the ALJ concluded that Plaintiff had several severe impairments: "obesity, lumbar degenerative disc disease, osteoarthritis, carpal tunnel syndrome, obstructive sleep apnea, and asthma." (Tr. 18.) However, the ALJ found that none of these impairments or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 20.) Based on the determinations that the Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the qualifying impairments, the Plaintiff's RFC, and the finding that there were jobs in significant numbers in the national economy that the Plaintiff could perform, the ALJ determined that the Plaintiff has not been under a disability since her amended alleged onset date of June 28, 2018. (Tr. 20-27.)

Plaintiff asserts that the ALJ's assessment of NP April Connell's opinion is not supported by substantial evidence and that rejection of her opinion warrants development of the record with further opinion evidence. (Doc. 13 at 12-16.) For the reasons set forth below, Plaintiff's argument fails.

New regulations came into effect in 2017, which govern this case. These new regulations provide revised instructions to the ALJ for evaluating medical opinions. For claims filed after March 27, 2017, 20 C.F.R. §§ 404.1520c and 416.920c declare that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." Instead, the ALJ will consider supportability, consistency, relationship with the claimant, length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, examining relationship specialization, and other factors in evaluating medical opinions and prior administrative medical findings, with the most important factors being supportability and consistency. 20 C.F.R. §§ 404.1520c, 416.920c. While the ALJ must explain the role of the supportability and consistency factors in evaluating the opinion of a medical source or administrative medical finding, he is not required to do the same for the other factors. *Id.* Additionally, the ALJ is not required to explain how he considered each medical opinion or prior administrative medical finding from one medical source individually when making his determination. *Id.*

Here, the ALJ evaluated three medical opinions in making his determination, those of Robert Estock, M.D., Thomas G. Amason, M.D., and April Connell, NPC. (Tr. 24, 99, 103, 944.) The ALJ found Dr. Estock's opinion that Plaintiff had mild

mental limitations persuasive, Dr. Amason's opinion that Plaintiff could perform work at the medium exertional level "somewhat persuasive," and Connell's opinion that Plaintiff would be unable to perform "low stress" jobs, could sit for only twenty minutes, could stand for fifteen minutes, needed unscheduled breaks, and required for her legs to be elevated half of the workday not persuasive. (Tr. 24.)

Plaintiff argues that while the ALJ was correct to discount Dr. Amason's opinion, he should not have given it favorable weight at all due to the difference between medium and sedentary work. (Doc. 13 at 15.) Plaintiff also contends that the ALJ erred in rejecting Ms. Connell's opinion because the ALJ improperly omitted evidence that supported Ms. Connell's opinion regarding leg elevation. (*Id.* at 15-16.) Dr. Amason's opinion indicated that Plaintiff could occasionally lift or carry fifty pounds, could frequently lift or carry twenty-five pounds, could sit, stand, or walk for about six hours during an eight-hour workday, and could frequently climb ramps/stairs, balance, and stoop. (Tr. at 100.) In contrast, Ms. Connell's opinion indicated that Plaintiff could not lift more than ten pounds, could not sit for more than twenty minutes at one time or stand for more than fifteen minutes at one time, could never stoop and could only rarely climb stairs, would need an unscheduled break every hour throughout an eight-hour workday, and would need to elevate her legs 50% of the time during an eight-hour workday. (Tr. at 993-95.)

In regard to both opinions, the ALJ was required to explain only the supportability and consistency factors and did not have a duty to provide anything further. 20 C.F.R. §§ 404.1520c, 416.920c. The ALJ explained that Dr. Amason's opinion was "only somewhat persuasive because it is inconsistent with the medical records as a whole and the evidence received subsequent to that determination." (Tr. 24.) Dr. Amason's opinion was dated August 7, 2019, and an MRI from October 2019 showed "minimal lower facet [degenerative joint disease], borderline disc signal change at 4/5 without height loss and very tiny central bulge." (Tr. 104, 944.) The ALJ also described a polysomnography from October 2019 that confirmed Plaintiff's severe obstructive sleep apnea diagnosis. (Tr. 23, 958-59.) This evidence was not considered by Dr. Amason, and the ALJ adjusted the RFC from Dr. Amason's recommended medium exertion level to sedentary to account for limitations presented by these subsequent findings. (Tr. 23-24.)

The ALJ explained that he found the opinion of Nurse Practitioner Connell to be unpersuasive "because it is not consistent with her correlative treatment records, or the treatment records from other medical sources" and added that "the objective medical evidence contains no medical restriction of the claimant's functioning at any time in the relevant period." (Tr. 24.) The ALJ pointed to two pieces of medical evidence as examples that supported his conclusion: a May 2019 examination in

which the plaintiff reported "no irregular heartbeat, no shortness of breath, no hematuria, no joint swelling, no limitation in range of motion, and no lymph node enlargement" and the October 2019 MRI discussed above that "showed only minimal lower facet degenerative joint disease, borderline disc signal change at 4/5 without height loss and very fine central bulge." (Tr. at 24, 860, 944.)

Elsewhere in his opinion, the ALJ also cited an echocardiogram that from May 18, 2018, which showed largely normal findings and only "mild concentric left ventricular hypertrophy" and a "mildly dilated" left atrium. (Tr. 23, 750-51.) The ALJ also noted a February 2019 follow-up office visit with Dr. Adam F. Shaw after her carpal tunnel release. (Tr. 24, 758-60.) Dr. Shaw's exam notes state that "her carpal tunnel incisions [are] well-healed" with "no tenderness to palpation throughout musculature," and Dr. Shaw also described Plaintiff as "neurovascularly intact distally." (*Id.*) Dr. Shaw's exam also revealed a "dorsal wrist ganglion cyst," but after discussing treatment options, Plaintiff declined and opted to use a brace that she had to rest it. (*Id.*) The ALJ also noted that Plaintiff received epidural injections for pain management in October 2018 and November 2019. (Tr. 23-24, 761-63, 939-40.) Finally, the ALJ also discussed a CT scan that identified no pulmonary thromboembolism, found that "[m]ild heterogeneity in the peripheral pulmonary arteries is likely artifactual," and further revealed normal heart size, no

aortic aneurysm or dissection, no significant adenopathy within the chest, no pleural effusion, no acute osseous abnormality, and no evidence of pneumonia. (Tr. 23, 947.) Ultimately, the impression described no acute findings. (*Id.*) Based on this evidence, the ALJ could properly find that Nurse Practioner Connell's assessment of Plaintiff's limitations is inconsistent with the medical record and unsupported by medical evidence in accordance with 20 C.F.R. §§ 404.1520c and 416.920c.

Despite the ALJ's use of evidence in making his assessment, Plaintiff still contends that the ALJ erred in rejecting Nurse Practitioner Connell's opinion because the ALJ improperly omitted evidence that supported her opinion regarding leg elevation. (Doc. 13 at 16.) However, even though Nurse Practitioner Connell recommended that Plaintiff elevate her legs 50% of the time during an eight-hour workday in her RFC questionnaire, she indicated in her treatment records that there were other methods Plaintiff could use to alleviate her symptoms, including increasing water intake and reducing salt in her diet, working on diet and weight loss, and taking medication as needed. (Tr. at 930, 992-95). The ALJ also cited other evidence that undermined Ms. Connell's opinion about leg elevation, including an unremarkable physical examination, no limitation in the range of motion, and an MRI that demonstrated only minimal lower facet degenerative joint disease. (Tr. at 24.) This evidence, combined with the inconsistencies in the treatment record, show that

the ALJ did not improperly omit evidence regarding Ms. Connell's opinion on leg elevation. Furthermore, even if the ALJ had not cited such evidence, the ALJ is "not required to articulate how [he] considered each medical opinion…from one medical source individually." 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1). The ALJ properly evaluated Ms. Connell's opinion in accordance with his duty.

Plaintiff also contends that the ALJ failed to fully develop the record after rejecting both opinions. (Doc. 13 at 16.) It is true that the ALJ "has a basic duty to develop a full and fair record." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). When an ALJ lacks sufficient evidence to make an informed decision, a court may remand for further development of the record. *Palmore v. Colvin*, 4:13-CV-00322-MHH, 2014 WL 3543701, at *3-4 (N.D. Ala. July 15, 2014) (discussing *Castle v. Colvin*, 557 Fed. Appx. 849, 853 (11th Cir. 2014) and citing *Manso-Pizarro v. Sec'y of Health and Human Servs.*, 76 F.3d 15, 19 (1st Cir. 1996) and *McCright v. Colvin*, 2014 WL 1513290 (N.D. Ala. April 11, 2014)). But the plaintiff "bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." *Ellison*, 355 F.3d at 1276; *see also* 20 C.F.R. § 416.912(a). "It is not unreasonable to require the [plaintiff], who is in a better position to provide information about his own medical condition, to do so." *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). Just because the ALJ found Nurse

Practitioner Connell's opinion to be unpersuasive does not mean that he was required to seek out other evidence to support his opinion, and if Plaintiff wanted him to consider other evidence, then she had the burden to produce it. 20 C.F.R. § 416.912(a).

In short, the ALJ had sufficient evidence to evaluate Dr. Amason's opinion and to reject Ms. Connell's opinion, and he did not err by declining to further develop the record. For these reasons, Plaintiff's argument fails.

## B. The ALJ's Evaluation of Plaintiff's Subjective Complaints

Plaintiff's subjective complaints alone are insufficient to establish a disability. *See* 20 C.F.R. §§ 404.1529(a), 416.926(a); *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991). Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). The Eleventh Circuit applies a two-part pain standard when a plaintiff claims disability due to pain or other subjective symptoms. The plaintiff must show evidence of the underlying medical condition and either (1) objective medical evidence that confirms the severity of the alleged symptoms arising from the condition, or (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged symptoms. *See* 20 C.F.R. §§ 404.1529(a), (b), 416.929(a), (b); Social

16

Security Ruling ("SSR") 16-3p, 2016 WL 1119029; *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).

If the first part of the pain standard is satisfied, the ALJ then evaluates the intensity and persistence of Plaintiff's alleged symptoms and their effect on his ability to work. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c); *Wilson*, 284 F.3d at 1225–26. In evaluating the extent to which the Plaintiff's symptoms, such as pain, affect his capacity to perform basic work activities, the ALJ will consider (1) objective medical evidence, (2) the nature of Plaintiff's symptoms, (3) the Plaintiff's daily activities, (4) precipitating and aggravating factors, (5) the effectiveness of medication, (6) treatment sought for relief of symptoms, (7) any measures the Plaintiff takes to relieve symptoms, and (8) any conflicts between a Plaintiff's statements and the rest of evidence. *See* 20 C.F.R. §§ 404.1529(c)(3), (4), 416.929(c)(3), (4); SSR 16-3p. In order to discredit Plaintiff's statements, the ALJ must clearly "articulate explicit and adequate reasons." *See Dyer*, 395 F.3d at 1210.

A credibility determination is a question of fact subject only to limited review in the courts to ensure the finding is supported by substantial evidence. *See Hand v. Heckler*, 761 F.2d 1545, 1548–49 (11th Cir. 1985), *vacated for rehearing en banc*, 774 F.2d 428 (11th Cir. 1985), *reinstated sub nom.*, *Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986). Courts in the Eleventh Circuit will not disturb a clearly articulated finding

supported by substantial evidence. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). However, a reversal is warranted if the decision contains no indication of the proper application of the pain standard. "The question is not . . . whether [the] ALJ could have reasonably credited [Plaintiff's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

Plaintiff argues that the ALJ erred in evaluating her subjective complaints because his assessment was unsupported by substantial evidence. (Doc. 13 at 16-18.) Specifically, Plaintiff contends that the ALJ failed to explain how Plaintiff's subjective complaints resulted in the ALJ's decision to lower the RFC from medium to sedentary. (Doc. 15 at 2.) However, Plaintiff's claim fails for several reasons.

First, in following the two-step process, the ALJ thoroughly reviewed the medical evidence, both relating to the symptoms she suffered from and how those symptoms might be treated. (Tr. at 22-25.) Furthermore, as discussed above, the ALJ also specifically explained that the October 2019 MRI and polysomnography that were conducted after Dr. Amason rendered his opinion influenced his decision to reject Dr. Amason's medium exertion determination in favor of an RFC at the sedentary exertional level. (Tr. 23-24).

The ALJ, however, also clearly considered Plaintiff's subjective complaints. Nurse Practitioner Connell's evaluation indicated that Plaintiff lived a "very very sedentary" lifestyle, and Plaintiff claimed that she "does not get out and do much because of her pain." (Tr. 871.) Plaintiff's subjective complaints, along with the medical evidence and opinions of medical professionals informed the ALJ's decision to reduce Plaintiff's RFC. In doing so, the ALJ also included a limitation allowing use of an assistive device for walking greater than ten feet at one time. (Tr. 22.) However, the medical evidence indicates that she was never prescribed an assistive device and uses one only occasionally, if she uses one at all. (Tr. 103, 994.) The only substantial evidence that Plaintiff uses a walker is from her testimony. (Tr. 51-52.) The ALJ considered both medical evidence and Plaintiff's substantive complaints in making his determination. The Court finds that substantial evidence supports the ALJ's decision, and Plaintiff's claim therefore fails.

## IV.  Conclusion

Upon review of the administrative record, and considering Plaintiff's argument, this Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** AND **ORDERED** ON AUGUST 1, 2022.

                                             */s/ L. Scott Coogler*

                                           L. SCOTT COOGLER
                                    UNITED STATES DISTRICT JUDGE

                                                                     206728